# Fink's Appeal.

1. The appointment of the guardian of a minor may be proved *aliunde* than by the adduction of the original petition and the record entry on the minutes of the orphans' court.

2. The owner of certain real estate having died intestate, his heirs in 1849 presented a petition, purporting to be signed by all the parties in interest, praying the orphans' court to order a sale of the real estate, in order to effect a partition. The petition was drawn up by an attorney. One of the parties thereto was the father of one of the heirs, who was a minor. The petition recited that he was the guardian of said minor. On this petition the court granted an order of sale, and the proceeds thereof were distributed among all the parties in interest, the said alleged guardian receiving the minor's share. About the same time the said alleged guardian joined, on behalf of his alleged ward, in a release to other of the intestate's heirs of all interest of in and to another part of decedent's real estate. Subsequently the said alleged guardian died, and in 1866 the ward attained full age. In 1877 the said ward filed a petition in the orphans' court praying for a citation to compel the trustees appointed by the court to sell the above real estate to file an account, alleging that petitioner's father had never been duly appointed her guardian, and had no authority to receive her share of the proceeds of the real estate. A clerk having made search among the records of the orphans' court, was unable to find any appointment of petitioner's father as her guardian. It appeared, however, that the search was not exhaustive, the indices being imperfect, and some of the records mislaid or in confusion. *Held,* that the court below was warranted, under the circumstances, in finding as a fact that the appointment had been made, and that the petition should therefore be dismissed.

April 12th 1882.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Orphans' Court of *Luzerne county :* Of January Term 1882, No. 349.

This was an appeal by Mary Ann Fink from a decree of said court dismissing her exceptions to, and confirming the adjudication in the matter of the account of John Weiss and Jeremiah Hess, trustees appointed to make sale, in partition, of the real estate of Daniel Walp, deceased.

The said trustees filed their account June 18th 1878, in pursuance of a citation and attachment issued at the instance of said Mary Ann Fink. At the audit thereof before the court the following facts appeared : Daniel Walp died intestate August 21st 1841, leaving as his heirs several children, among whom was Mary Ann, married to Aaron Slade. She died March 2d 1845, leaving her surviving her said husband and an infant daughter, Mary Ann (the appellant), born February 16th 1845. On February 8th 1849, proceedings for the partition of the real estate of Daniel Walp, deceased, were begun by petition in the Orphans' Court, and an inquest was returned setting forth that the same could not be parted without prejudice to or spoiling the whole,

and appraising the same at a certain valuation.  On August 20th 1849, a petition was filed by the heirs of Daniel Walp, including " Aaron Spade, who is the guardian of Mary Ann Spade, and who intermarried with Mary Ann Walp," reciting that the petitioners " are all the heirs of Daniel Walp, deceased, and of full age, except Mary Ann Spade, who is represented in this petition by her guardian," setting forth that all the said heirs had refused to take said real estate at the valuation, and praying the court to appoint trustees to make sale thereof.    The court thereupon appointed the above named accountants trustees, who sold the premises, and their return was duly confirmed by the court January 14th 1850.

It further appeared that certain of the heirs of Daniel Walp, deceased, including " Aaron Spade, guardian of Mary Ann Spade," by deed dated March 12th 1849, recorded Dec. 8th 1849, released and conveyed to certain others of said heirs their interest in a portion of the real estate of the decedent, as and for their shares of their father's estate, whereby the said Mary Ann became entitled to, and was awarded one-fifth, instead of one-seventh, of the proceeds of the real estate sold by the trustees.

The said trustees, in their account, claimed credit for the full share of Mary Ann Spade (now Fink), having paid the same to Aaron Spade as her guardian, and produced his receipts therefor, dated respectively in 1850, 1853, 1857, and 1862.

The said Mary Ann Spade married John Fink in 1865, and she came of age in 1867.  Aaron Spade, her father, died in 1871.

Mary Ann Fink denied that her father had ever been duly appointed her guardian.  The records of the Orphans' Court, other than the said proceedings in partition, failed to show any appointment of Aaron Spade as guardian, or that he had given security as such.  It appeared, however, that the old records of said court were incomplete, and in confusion; moreover, the search made by the assistant clerk of the court for evidence of such appointment was not exhaustive.  The proceedings in partition were conducted under the advice of counsel, and Weiss, one of the trustees, testified " Spade told me himself that the court appointed him, else I would not have given him the money. . . . In paying the different heirs I took my counsel's advice."

The court found, as a fact, " that Aaron Spade was appointed guardian of the person and estate of said Mary Ann Fink by the Orphans' Court of Luzerne county, but never gave bonds for the faithful discharge of his trust."  The court further found that said trustees had paid over the whole

of said Mary Ann Fink's distributive share to her said guardian, and, therefore, that there is nothing due to said Mary Ann Fink from said trustees.

Exceptions filed by Mary Ann Fink to the above findings were overruled by the court, and the adjudication was confirmed, whereupon Mary Ann Fink took this appeal, assigning for error the dismissal of her exceptions and the confirmation of the adjudication.

*Asa R. Brundage*, for the appellant.—The trustees distributed the fund upon their own responsibility, without filing an account, and without an order of court. They are therefore personally liable for its misapplication. To maintain their claim that they paid appellant's share to her guardian, they must show that Aaron Spade was her guardian. This they wholly failed to do. The mere insertion of the name of A. as guardian of B. in a petition for sale of real estate is no evidence, on distribution of the fund, of the alleged fact that A. was such guardian. Upon the mere filing of such a petition by counsel, the court would not be called upon, in the absence of denial of such guardianship, to inquire whether such appointment had been duly made ; but the trustees were bound, before paying the money without an order of court, to demand record evidence of the guardian's appointment. Otherwise, the rights of minors would be liable to be swept away by fraud and imposition upon the court, or by mistake. Negligence by trustees is equivalent to fraud. There was absolutely no legal evidence to support the finding of fact by the court that Aaron Spade was the appellant's guardian ; and if that finding falls, the conclusion of law that nothing is due to appellant by the trustees necessarily falls with it.

*George B. Kulp* and *S. J. Strauss*, for appellees.—The appellant married in 1865, and came of age in 1867, and admitted that she knew all the facts in 1869, but made no claim until after her father's death, which occurred in 1871. In the absence of primary evidence of her father's appointment as guardian, owing to the incomplete state of the records after this great lapse of time, there is ample secondary evidence of such appointment apart from the presumption of regularity, to wit : the recitals in the petition and order of sale in 1849, which, in effect, was an adjudication of the court that he was then guardian ; the fact that the proceedings were conducted by reputable counsel ; the assent to that fact by all the other heirs, of full age, who joined in the petition ; the testimony of John Weiss ; the absence of interest on the part of the heirs or trustees to misrepresent that fact ; and the long silence of the appellant, until after her father's death, when the matter is stirred up by her

husband.    After so great lapse of time, over twenty years, there is a strong presumption of payment to the rightful party, which cannot be rebutted by merely negative evidence that the record cannot be found : Beale *v*. Kirk, 4 W. N. C. 340.

Mr. Justice Green delivered the opinion of the court, May 1st 1882.

There is no question in this case that the appellees did pay the whole amount of the share of the appellant in the fund arising from the sale of Daniel Walp's real estate.    It was paid to Aaron Spade, her father, during her infancy.    The appellant alleges that this was a mispayment and now seeks to compel the appellees to pay her the money, together with interest for upward of thirty years.    The appellees allege that Aaron Spade was the guardian of the appellant, and that her share of the fund was paid to him as such.    The fact of guardianship is denied by the appellant, and this disputed question of fact constitutes the contention of the parties.    The denial of the guardianship is based upon the fact that no record of the appointment can be found.    If there were a legal requirement that the appointment of a guardian could only be proved by the adduction of the original petition, and the record entry on the minutes, the contention of the appellant would be sustained.    But we do not understand that there is any such rule.    Mr. Bogert, an assistant clerk, was examined, and testified that he had searched the files of the Orphans' Court, and found no appointment.    He also examined the indices.    He adds, however, that he did not examine either the docket or the minutes, and says also : "It has been found, in re-indexing Orphans' Court docket, there are many things that were not indexed : I also find there are many of the old files not to be found in office."    It is obvious, after such a statement as this, that there would be no propriety in the conclusion that the appointment was never made.    The examination was not complete in any sense, and simply developed that an imperfect search failed to discover the entry of an appointment. On the other hand, in support of the allegation of the appointment, very considerable testimony was given.    The fund was derived from the sale of a decedent's real estate under an order of the Orphans' Court.    The petition was presented on August 20th 1849.    It purported to be presented and signed by all the parties in interest, and, in reciting the names of the parties, describes one of them thus : "And Aaron Spade, who is the guardian of Mary Ann Spade, and who intermarried with Mary Ann Walp."    The appellant, Mary Ann Fink (formerly Spade), was at that time between four and five years of age, and, of course, could only act by a guardian.    On this petition the Orphans' Court, on the same day, granted an order of sale to the

appellees as trustees.  The order also recites Aaron Spade as
the guardian of Mary Ann Spade.  Under this order the real
estate was sold, and the proceeds were subsequently distributed
among all the parties entitled, without an account.  No com-
plaint was ever made by any of the other parties interested.  In
the year 1877, twenty-seven years after the confirmation of the
sale, the appellant filed a petition for a citation to compel the
trustees to settle an account.  The appellant attained her major-
ity in the year 1867, having married John Fink in 1865.  They
testified that they did not discover that they had a claim until
in 1869.  It seems that they brought a common law action
against the trustees in 1873.  In addition to the recitals of the
guardianship contained in the petition and order of sale, above.
mentioned, a deed was given in evidence dated March 12th 1849,
in which five of the parties interested, conveyed to the other
two a tract of land of the decedent in Hollenbach township.
Among the grantors was " Aaron Spade, guardian of Mary Ann
Spade."  John Weiss, one of the appellees, testified : " Jacob
Wealer was the attorney who carried through the whole pro-
ceedings.  I acted under his advice." . . . " Aaron Spade was
appointed as guardian in settling up the estate.  I treated with
him as to her share." . . . " I paid Mary Ann Spade's (Fink's)
share of the money to Aaron Spade."  By the foregoing facts
and testimony, it appears that the petition for the order of sale
was prepared by an attorney who, of course, knew the necessity
of the minor appearing by a guardian in the proceedings : that
an order of sale was granted by the Orphans' Court upon the
faith of the petition, and that the title passed to and was accept-
ed by the purchaser upon the assumption that Aaron Spade
was at that time the guardian of his daughter ; that the title to
another part of the decedent's real estate was conveyed to two
of the heirs upon the same assumption ; and finally, that the
trustees who received the proceeds of the sale paid the appel-
lant's share to her father, as her guardian.  It is difficult, indeed
impossible, to believe that all these transactions could have
taken place and yet that Aaron Spade in reality was not his
daughter's guardian.  The personal interests of those who dealt
with him in that character would necessarily have prompted
them to ascertain with certainty his title to his office, before
joining with him in a petition to the Orphans' Court, or in a
conveyance of real estate, or before receiving the title to land
from him, or paying him money which, if wrongly paid, would
subject them to a liability to pay it again.

It is much more easy to believe, either that the clerk made
an imperfect search for the record of the appointment, or that
the original petition was lost, or the entry not made.  The
Auditor has found as a fact that the appointment was made

[Fink's Appeal.]

and no bond given, and the court below has found that from all the facts in evidence they were bound to conclude that the appointment had been made.  We fail to discover anything in the case to impair the correctness of these findings.  The maxim, *omnia præsumuntur esse rite acta*, is clearly applicable in such a case; and when to this is added the positive testimony of a living witness, and strongly corroborative circumstances concurring with and happening in consequence of the principal fact in question, and that fact occurring more than thirty years ago, the judicial mind may well rest satisfied with the sufficiency of the proof.

Decree affirmed and appeal dismissed, at the costs of the appellant.